Marvin CHANEY, Appellant,

v.

STATE of Missouri, Respondent.

No. 27931.

Missouri Court of Appeals,
Southern District,
Division Two.

May 25, 2007.

Susan L. Hogan, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Joan E. Reed, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Marvin Chaney ("Movant") appeals from the motion court's denial of his Amended Motion to Vacate, Set Aside, or Correct Sentence and Judgment brought pursuant to Rule 24.035.[1] On April 8, 1997, Movant entered a negotiated *Alford*[2] plea to one count of the class A felony of first degree murder, a violation of section 565.020, and one count of the class B felony of kidnapping, a violation of section 565.110. Movant was sentenced to life without parole on the first degree murder charge and fifteen years on the kidnapping charge with the sentences to run consecutively. In Movant's amended Rule 24.035 motion and in his sole point on appeal, he contends he was denied effective assistance of counsel because his counsel "pressur[ed] [Movant] to plead guilty in order to avoid the death penalty, even though [Movant] did not believe that he was responsible for the offenses charged against him." Accordingly, Movant asserts he was "prejudiced because his guilty plea was not entered knowingly, intelligently, or voluntarily." Following an evidentiary hearing, the motion court denied relief. We affirm the judgment of the motion court.

The record reveals that on May 1, 1995, Movant was charged by complaint with one count of first degree murder and one count of kidnapping. On April 8, 1997, the day of trial, Movant entered into a plea agreement with the State under which he agreed to enter an *Alford* plea, as already stated, and the State agreed to stop pursuing the death penalty in his case. The State agreed it would request a sentence on the murder charge of life imprisonment without parole and a sentence of fifteen years on the kidnapping charge.

At the guilty plea hearing, Movant testified that the State recited the plea agreement as he understood it; he was instructed that he had the right to a jury trial;

---

**1.** All rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

**2.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Movant's *Alford* plea was entered based on a plea agreement with the State of Missouri ("the State"). It appears from the record that in exchange for Movant's *Alford* plea to the two counts detailed above, the State agreed to request life imprisonment without parole for Movant as opposed to the death penalty.

Due to the nature of Movant's claims, there is no need to recite the facts relating to his underlying conviction.

and he decided to proceed with the plea agreement as opposed to going to trial. Movant stated he understood the proceedings and plea agreement; was entering his plea freely and voluntarily; was able to recite the details of the plea agreement; understood the range of punishment for his crimes; and understood the rights he was giving up by waiving his right to a jury trial. Movant testified that no one had threatened him in order to induce his guilty plea; no one had promised him anything in exchange for pleading guilty; and no one had placed "any type of outward pressure ..." on him to accept the plea agreement.

Movant testified he had received information about his case from his counsel, including 900 pages of police reports, transcribed interviews with witnesses, copies of numerous depositions as well as legal documents and pleadings. Movant stated he knew there were witnesses who would testify he admitted to them that he committed the crimes at issue and he knew there were taped recordings of his incriminating statements to police. He also stated he knew that at the time of the crimes he was possibly suffering from alcoholism and he understood he could raise alcoholism as a defense at trial. Movant stated he had discussed the plea agreement with his counsel. When asked about his discussions with counsel, Movant stated he did not "recall ever doing this [crime] or having any part in it, but according to the evidence [he would] get convicted if [he went] to trial." He stated he understood that if he went to trial "there's a substantial likelihood that [he would] be convicted of first degree murder" and, in that situation, he would be eligible for the death penalty. As a result, he decided to enter an *Alford* plea as opposed to "risk being convicted and possibly getting the death penalty."

Following the State's recitation of facts and evidence, Movant informed the plea court he understood those were the facts which would be offered against him at trial and he had considered the aforementioned evidence in deciding to enter his plea. Movant stated he had no complaints about his counsel's representations "[e]xcept for missing a couple of meetings...." Movant stated his attorneys missed approximately twenty meetings with him in the two years they represented him, but he acknowledged the missed meetings were the result of "scheduling problems." Movant testified he did not feel he was prejudiced by the missed meetings, because they were re-scheduled. He stated he was satisfied with his counsels' representation; they did all of the things he asked them to do; had counseled him about the plea agreement and other aspects of the case; and they were always available to him.

Movant then withdrew his pleas of not guilty and entered *Alford* pleas to both counts. The plea court accepted Movant's pleas and found they were "entered voluntarily, understandingly and knowingly...." The trial court thereafter accepted the recommended sentence of the State and sentenced Movant as stated above.

On June 16, 1997, Movant filed his *pro se* Rule 24.035 motion for post-conviction relief. Thereafter, Movant was appointed counsel and a "First Amended Application for Postconviction Relief" was filed on March 9, 1998.

An evidentiary hearing was held on November 1, 2001. At the evidentiary hearing Movant testified that his attorneys took his case shortly after he was charged with the underlying crimes. He stated they seemed "confidant" at the beginning "but as time went on ... it kind of started sliding down." Movant testified that once things "started going downhill" his attorneys said he "would have a snowball [sic]

chance in hell in winning if [he] took it to trial." He stated that they started out being confident about his chances and then "started dwindling down to basically nothing." He stated he was unhappy with his attorneys' representation due to "the way their demeanor changed from the beginning to the end. . . ." Movant admitted that his attorneys' confidence in the case began to lessen after the evidence uncovered by them and the evidence proffered by the State started to make it less likely Movant would "be found [any]thing other than guilty of first degree murder at trial."

Movant testified that at 10:30 p.m. on the night before trial his attorneys visited him in jail to tell him about the State's plea offer. He stated "they seemed to be ecstatic," "happy," and "excited" about the plea offer and they "discussed it [with him] for . . . an hour or hour and a half, because [Movant] was totally against it." His attorneys thought he should take the plea agreement and believed "taking any kind of a deal to avoid the death penalty was clearly in [his] best interest because the evidence was overwhelming." Movant stated he "didn't want to take the deal," because he "thought it was wrong to admit to something [he] didn't do." Movant stated his attorneys gave him the impression that the evidence against him "was virtually overwhelming" and that if he were convicted "there was a very good probability that [he] would receive the death penalty. . . ." Movant stated he "got to thinking about [his] family . . . [and] even though [he was] incarcerated [he could] still be some kind of use in their li[v]es, and so basically that's why [he agreed to the plea agreement], but [he] never really had time to reflect on the situation." Movant stated his attorneys told him that "even though [he] would be incarcerated [he] would still lead somewhat of a productive life." He stated the "[b]ottom line" for his decision to take the plea agreement was "[s]o [he]

could be some kind of use to [his] family, [his] children." Movant admitted he was also inclined to accept the plea agreement based on the overwhelming amount of evidence against him and the probability that he would receive the death penalty if convicted.

Movant testified that his problems with his representation arose after he "had more time to think on it. . . ." He stated that at the time he accepted the plea offer he and his attorneys believed it was in his best interest and he had no reason to believe "that they informed [him] of something that was incorrect."

The deposition of one of Movant's attorneys, Patrick Berrigan ("Mr. Berrigan"), was entered into evidence at the evidentiary hearing. Mr. Berrigan testified that, prior to performing any discovery, he did not think he had "formed any definite impressions at the beginning of [Movant's] case. . . ." In the course of representing Movant, Mr. Berrigan stated he utilized investigators; "interviewed a lot of witnesses;" and took numerous depositions in order to fully investigate the charges against Movant. He stated there was evidence Movant had admitted to committing the underlying crimes to numerous people including several former cellmates as well as several relatives and he had given two incriminating recorded statements to police. Mr. Berrigan stated he and his co-counsel discussed with Movant the issue of whether to take the case to trial on numerous occasions as additional discoveries were made relating to the evidence against Movant. He stated "prospects seemed increasingly bleak as time went on because of statements made by [people] and evidence that was recovered, physical evidence recovered as a result of those statements that implicated [Movant] . . . in other murders." He testified that "the evidence [against Movant] certainly got

worse over time; that is, whatever probabilities of the success [he] may have had at the beginning, they diminished gradually over the succeeding two years."

Mr. Berrigan also related that "several months before the scheduled trial date [he was] interested in trying to obtain a guilty plea to spare [Movant's] life." He stated he had discussed a guilty plea with Movant and Movant "wasn't particularly enamored of it. . . ." He further related that Movant "had no prospect of obtaining a sentence of less than life imprisonment;" "[t]here was no possibility of parole;" and it was clear Movant "wasn't particularly interested in spending the rest of his life in prison." Mr. Berrigan also set out that Movant seemed "lukewarm" about the idea of pleading guilty, but Mr. Berrigan "needed him to face that probability" and believed "he'd come around eventually."

Regarding the plea offer which Movant ultimately accepted, Mr. Berrigan testified he had been in discussions with the State about a plea offer but he did not receive the actual plea offer until the night before trial.[3] He stated he arrived at the jail to visit Movant "after nine o'clock" and he and his co-counsel remained at the jail for about an hour and a half. He related Movant "was initially reluctant" about taking the plea offer. Mr. Berrigan testified Movant did not have a problem "with entering the plea, but with the consequences of [the] plea . . . that he would forever be locked up in jail, unable to see his kids and his wife . . . and, you know, what kind of an existence that would be for him." Mr. Berrigan told Movant that he could still live a fairly productive life in prison and it would be better than being on death row.

He stated Movant had from sometime the night before trial until the next morning when they went to court to decide whether to accept the plea agreement. Mr. Berrigan stated that time frame "is not particularly unusual—at least [for a] final offer." He related they "had been discussing the possibility of a guilty plea for months," but the State had never made an acceptable offer prior to that time. He stated the plea agreement even allowed for Movant to enter an *Alford* plea, which was "somewhat unusual" given the charges, but it was necessary in order to get Movant to accept the plea, because he could not recall committing the crimes. Mr. Berrigan also stated he recommended accepting the plea because "the fact that he couldn't remember was not going to save him from death by lethal injection if he was convicted." Mr. Berrigan admitted he was "[u]nequivocally, unabashedly . . . delighted that the offer [was] made . . . because [he] liked [Movant] . . . and did not want to see him lethally injected." He stated that he feels now, as he did at the time the deal was accepted, that taking the plea agreement "was absolutely the best decision [Movant's] ever made in his entire life. Because, otherwise . . . he'd be on death row."

The motion court entered its findings of fact and conclusions of law on July 6, 2006, in which it found "[t]here is nothing in Movant's testimony or the transcript of the plea that would indicate that Movant's plea of guilty was anything other than knowing, intelligent and voluntary." Thereafter, the motion court denied Movant's request for relief. This appeal followed.

**3.** Mr. Berrigan testified the State had previously approached him with physical evidence that Movant had been involved in the murders of several other women. Mr. Berrigan further testified the State's previous plea offers required Movant "to confess to the murders of these [three] other women . . ." in order to avoid the death penalty. The plea offer made the evening prior to trial was the first plea offer that did not reference these other possible crimes.

In his sole point on appeal Movant asserts the motion court erred in overruling his Rule 24.035 motion in that his trial counsel was ineffective and "caused [him] to plead guilty involuntarily, by pressuring [him] to plead guilty in order to avoid the death penalty, even though [Movant] did not believe that he was responsible for the offenses charged against him." Accordingly, Movant maintains he "was prejudiced because his guilty plea was not entered knowingly, intelligently, or voluntarily."

Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Ross v. State*, 48 S.W.3d 667, 669 (Mo.App.2001). " 'The findings and conclusions are deemed erroneous if after reviewing the record, this [C]ourt is left with the definite and firm belief that a mistake has been made.' " *Goings v. State*, 1 S.W.3d 600, 601 (Mo. App.1999) (quoting *Saffold v. State*, 982 S.W.2d 749, 752 (Mo.App.1998)). We presume that the motion court's findings and conclusions are correct. *Butts v. State*, 85 S.W.3d 132, 134 (Mo.App.2002).

To prevail on a claim of ineffective assistance of counsel a "movant must show his [counsel's] representation fell below an objective standard of reasonableness and that, as a result, he was prejudiced." *Cupp v. State*, 935 S.W.2d 367, 368 (Mo.App.1996); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Movant must show, but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Cupp*, 935 S.W.2d at 368. "If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Mov-

ant's claim of ineffective assistance of counsel must fail." *Patrick v. State*, 160 S.W.3d 452, 455 (Mo.App.2005).

Where, as here, there is a negotiated plea of guilty, a claim of "ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Cupp*, 935 S.W.2d at 368. "An *Alford* plea is not treated differently than a guilty plea where the accused admits the commission of the crime charged." *Id.* " 'As with any guilty plea, an *Alford* plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." ' " *Id.* (quoting *Sexton v. State*, 36 S.W.3d 782, 785 (Mo. App.2001)). Furthermore, "[a]bsent an abuse of discretion, this Court defers to the trial court's determination as to whether a prisoner's guilty plea was voluntary." *Jenkins v. State*, 9 S.W.3d 705, 708 (Mo. App.1999). Movant bears the burden of proving his post-conviction claims, including a claim of ineffective assistance of counsel, by a preponderance of the evidence. Rule 24.035(i).

It is axiomatic that " '[g]uilty pleas must be made knowingly and voluntarily.' " *Jenkins*, 9 S.W.3d at 708 (quoting *Johnson v. State*, 921 S.W.2d 48, 50 (Mo.App.1996)). "It has long been held that a guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Boyd v. State*, 205 S.W.3d 334, 340 (Mo.App.2006). " 'A plea of guilty is not made voluntarily if the defendant is misled, or is induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded.' " *Id.* (quoting *Bequette v.*

*State,* 161 S.W.3d 905, 907 (Mo.App.2005)). "Moreover, 'the mere . . . advice of counsel will not lead to a finding of legal coercion rendering a guilty plea involuntary.'" *Tyus v. State,* 913 S.W.2d 72 (Mo.App. 1995) (quoting *Spencer v. State,* 805 S.W.2d 677, 679 (Mo.App.1990)); *see also Loudermilk v. State,* 973 S.W.2d 551, 554 (Mo.App.1998) (holding that "[a] mere prediction or advice of counsel will not . . . render[ ] a guilty plea involuntary"). Additionally, the fact "[t]hat a defendant may have pleaded guilty in order to avoid the death penalty does not render the plea coerced or involuntary." *Brown v. State,* 821 S.W.2d 113, 117 (Mo.App.1991); *see Samuels v. State,* 770 S.W.2d 717, 722 (Mo.App.1989). "In claiming that the plea was induced by coercion and, thus, not voluntary, appellant must show . . . mistake, misapprehension, persuasion or holding out of hope which proves to be false or ill-founded." *Brown v. State,* 755 S.W.2d 414, 416 (Mo.App.1988).

 In the present matter there is nothing in the record to support Movant's assertions he was coerced or pressured by his trial counsel into pleading guilty. Here, as previously related, Mr. Berrigan testified that during the course of his representation of Movant he became increasingly concerned about Movant's chances of being convicted and receiving the death penalty. He related that Movant had made incriminating statements to numerous cellmates and several relatives; Movant had been implicated in the similar murders of three other women; Movant made incriminating taped statements to the police; there was physical evidence linking Movant to the crimes; and there were numerous witnesses willing to testify against Movant regarding Movant's involvement in the crime. Mr. Berrigan testified he had fully investigated Movant's case and believed Movant would be convicted if he went to trial. He stated he had been discussing the possibility of a plea bargain with Movant for a long period of time and had discussed his concerns about Movant's case with him.

On the evening before trial, Mr. Berrigan visited Movant in jail and explained the plea agreement to him. He discussed the agreement with Movant at length and again recited his fears to Movant that Movant would most likely be convicted if he went to trial and would then be sentenced to death. He recognized Movant's fears about being incarcerated for the rest of his life and assured Movant that it would be worse to be on death row. Mr. Berrigan admitted he was enthusiastic about the State's plea offer and that he urged Movant to accept the offer in an effort to save Movant from the death penalty.

 It is the duty of counsel to advise a client of the possible consequences of trial so that the client may make an informed decision as to whether to accept or to reject a plea agreement. *Brown,* 821 S.W.2d at 117. It appears Mr. Berrigan advised Movant of the ramifications of proceeding to trial; of the probability that he would be convicted; and of the likelihood that he would receive the death penalty. "Sound advice by counsel does not constitute coercion merely because it is unpleasant to hear." *Davis v. State,* 754 S.W.2d 593, 594 (Mo.App.1988).

Further, at the plea hearing, Movant stated he understood that if he went to trial "there's a substantial likelihood that [he would] be convicted of first degree murder" and, in that situation, he would be eligible for the death penalty. He informed the plea court that he had decided to accept the plea offer as opposed to "risk being convicted and possibly getting the death penalty." Movant's own statements at the plea hearing suggest he had all of

the information available to him from which to make an informed decision as to whether to accept or to reject the plea agreement. *See id.*

"Moreover, the claim of coercion is refuted by the guilty plea transcript which records [Movant's] express denials that threat or coercion prompted his plea and his affirmations that trial counsel gave satisfactory service and did the job well." *Brown,* 821 S.W.2d at 117. Here, Movant specifically testified that no one had threatened him in order to induce his plea; no one had promised him anything in exchange for his plea; and no one had placed "any type of outward pressure . . ." on him to accept the plea agreement.

Additionally, a movant "'who repeatedly assures the court that he is satisfied with his counsel's performance and that his counsel had done everything that he requested, is later barred from obtaining post-conviction relief based on ineffective assistance of counsel.'" *Estes v. State,* 950 S.W.2d 539, 542 (Mo.App.1997) (quoting *Hamilton v. State,* 865 S.W.2d 374, 375 (Mo.App.1993)). At the plea hearing, the only complaint Movant had about his counsels' performance was that they "miss[ed] a couple of meetings . . ." due to scheduling issues, but Movant stated he did not feel prejudiced by the missed meetings because they were re-scheduled. Movant went on to state that he was satisfied with his counsels' representation; they did all of the things he asked them to do; they had counseled him about the plea agreement and other aspects of the case; and they were always available to him.

Movant's claim that his plea was involuntary because his counsel pressured or coerced him into accepting the State's plea agreement is refuted by the record. Movant has not alleged any fact, not refuted by the record, showing that his counsels' "representation fell below an objective

standard of reasonableness and that, as a result, he was prejudiced." *Cupp,* 935 S.W.2d at 368; *Brown,* 755 S.W.2d at 416.

Additionally, Movant has not proven his plea was not a knowing and intelligent act undertaken with sufficient awareness of the relevant circumstances and likely consequences. *See Boyd,* 205 S.W.3d at 340. The findings of fact and conclusions of law of the motion court are not erroneous. *See Ross,* 48 S.W.3d at 669. Point denied.

The judgment of the motion court is affirmed.

GARRISON, J., and LYNCH, J., concur.