Carl EPKINS, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30349.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 2011.

Gwenda Renee' Robinson, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, and Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Carl Epkins ("Movant") appeals the motion court's denial of his Rule 29.15[1] motion asserting his trial counsel was ineffective for inducing Movant's involuntary waiver of his "jury-trial right." We affirm the motion court.

## Factual and Procedural History

The following facts are recited in the light most favorable to the motion court's ruling. *State v. Smith,* 944 S.W.2d 901, 909 (Mo. banc 1997). Movant, and his wife Keisha Epkins ("Keisha"),[2] were separated and lived in different towns. Keisha was continuing a sexual relationship with Eddie Luster ("Luster"), who had fathered her child born during her marriage to Movant. On November 24, 2005, Luster visited Keisha at her apartment. Later that night, Movant entered Keisha's apartment with a pistol. He ordered Luster, who was asleep on the couch, into the bedroom where Keisha was sleeping with her 5–month old daughter. There, he shot Luster three times and Keisha five times. Luster survived; Keisha did not. The baby was unharmed.

On November 24, 2005, Movant was charged with four felony offenses in Pemiscot County, Missouri: count I, class A felony of murder in the first degree in violation of section 565.020;[3] count II, unclassified felony of armed criminal action in violation of section 571.015; count III, class A felony of assault in the first decree in violation of section 565.050; and count IV, unclassified felony of armed criminal action in violation of section 571.015.

Movant was assigned two public defenders, Cynthia Dryden ("Ms. Dryden") and Sharon Turlington ("Ms. Turlington"), because the State initially sought the death penalty and these public defenders had experience in capital cases. Movant's attorneys had on-going discussions with the State regarding possible plea offers for Movant. During these negotiations, Movant developed a health issue from a prior gunshot wound. Movant claimed he was not receiving proper medical treatment in the county jail. Movant displayed his abdomen to Ms. Dryden and Ms. Turlington, where his internal organs were protruding. It appeared Movant had a "large hernia" or "pouch" and "the only thing between [Movant's] organs in the world was a thin layer of skin." Movant's attorneys repeatedly advocated for Movant to receive outside medical treatment and a corset to restrain and protect his internal organs.

After a local clinic evaluated Movant and determined he needed immediate medical attention or surgery, the State offered to waive the death penalty in his murder case in exchange for Movant's waiver of his right to a jury trial. As part of the agreement, Movant would be required to enter an *Alford* plea on a flourishing/exhibiting weapon charge in another case, separate from this appeal, which would allow him to be transferred to the Department of Corrections (the "DOC"). The State's offer was memorialized in a letter dated November 28, 2006. The prosecutor's letter stated, in part:

> This will confirm that I would like to get [Movant] out of the county jail and into the Department of Corrections. The reason I want to do this is because of his medical problems. I am afraid that if he has some sort of an attack that Pemiscot County could be stuck with an extremely large medical bill.

**1.** All rule references are to Missouri Court Rules (2010).

**2.** As Keisha Epkins has the same last name as Appellant, she will be referred to by her first name for purposes of clarity. No disrespect or familiarity is intended.

**3.** All references to statutes are to RSMo 2000, unless otherwise indicated.

The letter also stated it was understood Movant's counsel would be communicating with Movant by telephone, and maybe in person, within the week regarding the State's plea offer. The letter did not indicate any deadline for accepting the State's offer, but it included a handwritten note from the prosecutor stating: "P.S. If [Movant] wants to do this I would like to do it ASAP."

On December 5, 2006, pursuant to a mutual agreement, the State waived the death penalty and Movant waived his right to a jury trial. At the hearing, the court found Movant's waiver was freely and voluntarily made after consultation with counsel. This finding was confirmed by the court on the record on June 6, 2007.

Movant was transferred to the DOC on December 5, 2006. Movant's condition was then assessed by surgeons who determined immediate surgery was not required, but that he needed laxative medications. This medical treatment was provided before Movant's bench trial.

On June 7, 2007, after a two-day bench trial, the trial court found Movant guilty on all four counts. On July 17, 2007, the trial court sentenced Movant to: (1) life imprisonment without possibility of probation and parole on count I; (2) a ten-year term of imprisonment on count II; (3) life imprisonment on count III, to run consecutively with count I; and (4) a ten-year term of imprisonment on count IV, to run concurrently with count II, and to run consecutively with counts I and III. Movant appealed his convictions. On December 12, 2008, pursuant to Rule 30.25(b),[4] this Court affirmed Movant's convictions and sentences by a per curiam memorandum and order.

On March 3, 2009, Movant filed a pro se "Motion to Vacate, Set Aside or Correct the Judgment or Sentence" pursuant to Rule 29.15. On June 10, 2009, Movant's appointed counsel filed an "Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing." In his amended motion Movant alleges, *inter alia*, that trial counsel was ineffective for "inducing [Movant's] involuntary waiver of his right to a jury trial" as part of a plea agreement with the State. Specifically, the motion alleged trial counsel coerced Appellant into waiving his right to a jury by telling him it "would save his life" because "the State would agree to waive the death penalty."

On October 27, 2009, the motion court held an evidentiary hearing. Movant and his two trial attorneys testified.

Ms. Dryden testified that before trial, she and her co-counsel had "repeated conversations with the county jail regarding having [Movant] seen by a doctor, making sure his condition was safe, making sure he had the corset and that he could keep that on to protect the internal—external covering to hold that pouch in and so it would be protected." She testified they arranged for Movant to be seen at a medical clinic in southeast Missouri, and the medical provider "raised concerns with the jail about [Movant's] injury." She testified these concerns "caused the State to make the death-waive, jury-waive offer."

Ms. Dryden testified she discussed the State's offer with Movant. Initially she believed Movant did not understand the offer, but they "spent a while talking with him, explaining it, what [they] thought were the pros and cons" of the offer, and she advised Movant to accept the State's offer and waive his right to a jury trial. She testified that in light of "the facts of the case and the inflammatory nature, especially with the child being present, alleg-

---

4. All rule references are to Missouri Court Rules (2008).

edly, during the shooting, and for a number of other reasons, [Movant] agreed to do the death-waive, jury-waive...." Ms. Dryden testified she never told Movant "he had to waive his right to a jury trial in order to receive medical treatment." She testified she "might" have told him medical treatment "might happen quicker" if he was transferred to the DOC. She testified she did not coerce Movant into waiving his right to a jury trial and believed it was "in his best interest to waive the jury trial in return for a waiver of the death penalty."

Ms. Turlington confirmed Movant had health issues while in the county jail. She also testified that shortly after the clinic's assessment, an agreement was made that if Movant pled guilty to flourishing a gun, he would be transferred to the DOC, and "that in agreement to pleading on that case, the State would waive the death penalty in the murder case if ... [Movant] would waive a jury." She admitted she told Movant if he pleaded guilty, he would go to the DOC sooner and be more likely to receive medical treatment, which might involve surgery. She testified she did not coerce Movant into waiving his right to a jury; rather, she discussed the various issues with Movant. Ms. Turlington agreed no one ever told her Movant would not receive medical treatment if he stayed in the county jail. She testified that removing the death penalty from the case was "potentially" saving Movant's life because of "the way the evidence looked...." She stated: "[R]egardless of [Movant's] medical issues, waiving a jury to have the death penalty waived was better for his murder case." She reiterated Movant ultimately made the decision to waive his right to a jury.

Movant testified he entered an *Alford* plea in the gun flourishing case before he stood trial for murder and was moved to the DOC on December 5, 2006—about a week after the State's letter. He testified he was not satisfied with his attorneys because they coerced him to waive his right to a jury. Movant testified his attorneys told him if he accepted the State's offer it would get him to the DOC, where he could obtain medical treatment. He testified his attorneys then advised him his case was not a "jury appealing case" and "they believed that [he] would possibly get the death penalty." Movant admitted he waived his right to a jury trial, but testified he "did it under duress" due to his medical condition, the pressure from his attorneys, and the pressure of his family. He testified: "It really wasn't an issue about the trial in particular at the time, it was about my medical issue because my bowels were locking up." Appellant claimed "they wouldn't treat [him]," he "was about [to] die," and he "was dying, basically." He testified he did not think a jury would find him guilty of murder in the first degree. ·

On December 16, 2009, the motion court denied Movant's Rule 29.15 motion. The motion court found: "Movant waived a jury knowingly, voluntarily, and intelligently, and he is not entitled to relief on his claim...." On January 25, 2010, Movant filed his notice of appeal.

Movant contends the "motion court clearly erred in denying [Movant]'s Rule 29.15 motion because trial counsel was ineffective for inducing his involuntary waiver of his jury-trial right." The State denies this contention. The determinative issue is whether trial counsel coerced Movant into waiving his right to a jury trial.

## Standard of Review

■ "A motion court's denial of a claim of ineffective assistance of counsel based on a Rule 29.15 motion is reversed only when its findings of fact or conclusions of law are clearly erroneous." *State v. Landers*, 969 S.W.2d 808, 812 (Mo.App.

W.D.1998); Rule 29.15(k). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(i). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D. 2010).

## Analysis

To prove ineffective assistance of counsel, the movant must demonstrate: (1) his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) his defense was prejudiced as a result of that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995). Movant must overcome the strong presumption that counsel was competent. *Landers*, 969 S.W.2d at 812. "Trial strategy is not a ground for ineffective assistance." *Storey*, 901 S.W.2d at 893.

The right to a jury trial is guaranteed in criminal cases by the United States Constitution and the Missouri Constitution. U.S. Const. amends. VI and XIV; Mo. Const., art. I, sections 18(a) and 22(a); *State v. Baxter*, 204 S.W.3d 650, 652–53 (Mo. banc 2006). However, Article I, Section 22(a) of the Missouri Constitution explains that " 'in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, whose finding shall have the force and effect of a verdict of a jury.' " *Dishmon v. State*, 248 S.W.3d 656, 660 (Mo.App. S.D.2008) (quoting Mo. Const., art. I, section 22(a)). "Any waiver of a jury trial must be knowing, voluntary, and intelligent, and must be present in the record with 'unmistakable clarity.' " *Dishmon*, 248 S.W.3d at 660 (quoting *Baxter*, 204 S.W.3d at 653).

Here, Movant alleges his trial counsel was "ineffective for inducing his involuntary waiver of his jury-trial right" and a "reasonably competent attorney under the same or similar circumstances would have effectively communicated that the decision whether to proceed to jury trial was [Movant's] alone, would have abided by [Movant's] decision to proceed to jury trial, and would not have pressured [Movant] into waiving his jury-trial rights."[5] The motion court, however, found trial counsel's advice about waiving a jury trial "reason-

5. The State contends this Court should decline to review Movant's claim because Movant's amended motion only alleged his trial attorneys coerced him to waive his jury-trial rights "by telling him that, unless he waived his right to a jury (and obtained the benefits of the State's proposed offer to waive the death penalty), he would receive a sentence of death," but on appeal, Movant argues trial counsel coerced Movant into waiving his jury-trial right by promising medical treatment if transferred to the DOC and threatening that Movant would possibly die if he did not receive medical treatment. We acknowl-

edge Movant's amended motion more generally refers to trial counsel's allegedly coercive conduct and does not specifically mention Movant's medical condition. Nevertheless, during the evidentiary hearing, Movant's claim of coercion based upon trial counsel's alleged inducement stemming from his medical condition was clearly presented to the motion court. Since Movant's argument on appeal was generally encompassed in Movant's amended motion, and presented to the motion court at the evidentiary hearing, we choose to review the merits of Movant's claim.

**528**

able trial strategy" and that counsel "did not fail to inform him of his right to a jury trial; nor did they pressure or coerce him into waiving a jury." The motion court expressly found the "attorneys were credible witnesses" and resolved any conflicts between their testimony and the testimony of the Movant in favor of the attorneys. This Court must defer to the motion court's witness credibility findings. *Hurst,* 301 S.W.3d at 117. In light of the motion court's findings on credibility, we do not find the findings of fact and conclusions of law clearly erroneous.

Movant claims trial counsel pressured him by "promising that he would receive medical treatment if he pleaded guilty to the separate flourishing charge, and waived his right to a jury trial" on the other charges; however, evidence adduced at the hearing does not support this accusation. Movant's attorneys were admittedly concerned for Movant's health and took reasonable steps to address this concern by repeatedly communicating with the county jail and arranging for a medical evaluation outside the jail. However, Ms. Dryden testified she never told Movant he had to waive his right to a jury trial in order to receive medical treatment. Similarly, Ms. Turlington testified she never was told Movant would not receive medical treatment if he stayed in the county jail. Instead, the record shows Movant's attorneys did inform him he might receive medical treatment sooner if he was transferred to the DOC. Although we find it unfortunate that this may have been a consideration for Movant, the information conveyed by trial counsel was not inappropriate or misleading.

■ The State admitted Movant's medical condition prompted it to fashion an offer that allowed Movant to avoid the death penalty by pleading guilty in another case, and waiving his right to a jury in the present case. It was clear from the State's letter that the motivation was to prevent the county from being "stuck with an extremely large medical bill." This fact, however, does not support Movant's position that he was consequently coerced by his trial counsel. There is no credible evidence showing medical treatment was withheld from Movant or that trial counsel induced Movant to waive his jury-trial right by "promising" medical treatment. Additionally, we note the State, not Movant's attorneys, had control over the medical care Movant received or did not receive while incarcerated.[6]

■ Movant's attorneys do not dispute they recommended Movant waive his right to a jury trial. Both attorneys advised Movant that proceeding to trial without the possibility of a death sentence was his best option, and reasonably believed this in spite of Movant's medical concerns. "It is the duty of counsel to advise a client of the possible consequences of trial so that the client may make an informed decision as to whether to accept or to reject a plea agreement." *Chaney v. State,* 223 S.W.3d 200, 207 (Mo.App. S.D.2007). Ms. Dryden and Ms. Turlington thoroughly discussed the State's offer with Movant. Specifically, Ms. Dryden testified initially she believed Movant did not understand the offer, but they "spent a while talking with him, explaining it, what [they] thought were the pros and cons" of the offer. She recommended Movant accept

---

6. We note Movant does not argue trial counsel was ineffective for failing to have the waiver withdrawn based on any allegedly coercive tactics by the State, and thus, we need not address this issue. Assuming, *arguendo,* any coercive tactics were used, Movant had opportunities after December 5, 2006, in his court appearances, to request his waiver be withdrawn, and no such request was made.

the State's offer and waive his right to a jury trial. " 'Sound advice by counsel does not constitute coercion merely because it is unpleasant to hear.' " *Chaney*, 223 S.W.3d at 207 (quoting *Davis v. State*, 754 S.W.2d 593, 594 (Mo.App. S.D.1988)).

Ms. Dryden also mentioned after discussing "the facts of the case and the inflammatory nature, especially with the child being present, allegedly, during the shooting, and for a number of other reasons [Movant] agreed to do the death-waive, jury-waive. . . ." Ms. Turlington also testified they discussed these issues with Movant and she believed "regardless of the medical issue, waiving a jury to have the death penalty waived was better for his murder case." *See Smith v. State*, 837 S.W.2d 25, 28 (Mo.App. W.D.1992) ("The decision to waive a jury trial in this case was a matter of trial strategy and consequently does not provide a basis for post conviction relief"). She also testified it was ultimately his decision to waive the jury trial.

Thus, Movant failed to establish his trial counsel did not exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances. In fact, Movant was afforded an evidentiary hearing; credible substantial evidence was presented that Movant was informed by trial counsel of his fundamental right to a jury; and he knowingly, intelligently, and voluntarily waived it. Having found no error in the motion court's finding that Movant failed to sustain his burden of proving deficient performance by his counsel, we need not address Movant's arguments related to the prejudice prong of the *Strickland* test. *See Dorsey v. State*, 113 S.W.3d 311, 314 (Mo.App. S.D.2003).

After reviewing the entire record, this Court is not left with a definite and firm impression that a mistake has been made by the motion court as to trial counsels'

performance related to Movant's waiver of a jury trial. Therefore, the motion court's findings are not clearly erroneous. Movant's point is denied.

For the foregoing reasons, the motion court's decision is affirmed.

RAHMEYER, P.J., and BATES, J., Concur.