Ralph Anthony **BARRY**, a/k/a Anthony R. Barry, a/k/a Ralph Barry, Movant–Appellant,

v.

**STATE of Missouri, Respondent– Respondent.**

No. SD 31653.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 11, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 2013.

Donald A. Hale, Steelville, MO, for Appellant.

Richard A. Starnes, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

In three points relied on, Ralph Anthony Barry ("Movant") appeals the motion court's denial after an evidentiary hearing of his Rule 24.035 motion for post-conviction relief.[1] Movant's first point challenges the sufficiency of Count III of the State's Information. His second point claims that his plea counsel was ineffective for failing to ask the plea court to allow Movant to withdraw his guilty plea. Movant's final point asserts his guilty plea was unknowing and involuntary because his attorney failed to explain the significance of his plea and plea agreement. Finding no merit in any of these claims, we affirm.

### Applicable Principles of Review

Our review of the denial of a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 24.035(k); *see also State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997). Such findings and conclusions are clearly erroneous only if our review of the record leaves us with a "definite and firm impression [that] a mistake has been made." *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996). The motion court's findings and conclusions are presumptively correct, *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991), and Movant must prove his claims by a preponderance of the evidence. Rule 24.035(i); *see also Nunley*, 923 S.W.2d at 922.

1. All rule references are to Missouri Court Rules (2012).

### Factual and Procedural Background

#### The Guilty Plea

On May 11, 2010, Movant entered an *Alford*[2] plea of guilty to one count of stealing (Count II, *see* section 570.030) and one count of financial exploitation of the elderly (Count III, *see* section 570.145).[3]

At the plea hearing, the State described its evidence on Count III as follows:

> That [Movant] began a friendship with [the victim] in the year 2003, and in between the year of 2003 up to and including 2008 as described in the State's information in Count Three, [the victim] was an elderly individual during this time. [The victim] was, based on representations by [Movant] that he was owed significant inheritance, induced . . . to part with sums of monies for various items, that those amounts occurred semi-regularly for the period in between 2003 and what was described in the information in Count Three, and 2008 and that those amounts totaled a value of $50,000.00. [The victim] was over the age of 60 years old.

Movant agreed that the State would be able to produce such evidence.

In regard to any plea agreement, the following record was made:

> THE COURT: Is there a negotiated plea in this?
>
> [The Prosecutor]: Judge the only recommendation was that we would nolle count I. There is no agreement as to sentence in this particular case.
>
> THE COURT: Okay just an SAR? [Indicating a sentencing assessment report.]
>
> [Plea counsel]: An SAR and no amended information. as to prior and persistent felon.

> THE COURT: Okay. Is that your understanding[,] Sir? There's no agreement between you and the State?
>
> [Movant]: Right[,] I understand that.
>
> THE COURT: Except as announced by your attorney, the nolle of Count I and no filing of the prior and persistent.
>
> [Movant]: I understand.

Movant stated as follows his understanding that there was no agreement as to what his sentence would be and that he understood the possible range of punishment for his crimes:

> THE COURT: Has anyone made any promise about the sentence you are to receive?
>
> [Movant]: No.
>
> THE COURT: Do you understand that no one can promise you what your sentence will be and that any such promise is not binding on this court and that this court can impose any sentence within the range of punishment permitted by law?
>
> [Movant]: I understand.
>
> THE COURT: Sir[, addressing Movant] what is the range of punishment on a class C felony?
>
> [Movant]: Five to seven.
>
> THE COURT: What's the range of punishment on a class B felony?
>
> [Movant]: Up to fifteen.

Movant also assured the court that no threats or promises induced him to plead guilty. The court accepted Movant's guilty plea and ordered a SAR.

#### The Sentencing Hearing

At Movant's sentencing hearing, the State initially recommended that Movant

---

**2.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**3.** All statutory references are to RSMo Cum. Supp.2011.

receive "no less than five years on the class C felony and not less than ten years on the class B felony and the sentences be run consecutive." Plea counsel then stated that it was her understanding that the State's recommendation "would be for five and ten consecutive, not as they stated, not less than five and not less than ten, but ten and five, for fifteen consecutive." The prosecutor replied, "That's what I've stated." Plea counsel informed the court that this recommendation from the State was based upon an event that occurred after Movant had pleaded guilty but before the start of his sentencing hearing. That event was Movant's agreement to "sign over" the contents of his bank account (approximately $3,000) to the victim of his crimes. In making her sentencing argument, plea counsel stated that if the sentence was "fifteen years," then it should be concurrent, but she was requesting a sentence of "ideally ten years[.]" She also requested that Movant's sentences run concurrently, not consecutively.

The plea court chose not to follow any of the recommendations made by counsel and sentenced Movant to serve consecutive fifteen- and seven-year sentences. After those sentences were pronounced, Movant stated that he was satisfied with his attorney's representation in the case.[4] At no time during the sentencing hearing did anyone claim that there was an agreement between Movant and the State that Movant would be sentenced in accordance with the sentence recommended in the SAR.

### The Motion Hearing

In contrast to his previous sworn testimony, Movant's testimony at the motion hearing concerning his understanding of what his punishment would be was as follows:

Q. What did you understand with respect to whether there was a plea deal, not a plea deal, or what, in effect, you were going to get or how it was going to be determined when you entered an *Alford* plea here on May the 11th, 2010?

A. I thought that I would be sentenced to the—according to the recommendation in the SAR report, which was ten years. I believe I would have gotten an additional five years for the coin theft collection, and it was my belief that I would have gotten ten years.

Q. You mean ten and five concurrent?

A. Yes.

Q. Well, tell the [motion c]ourt why you formed that belief or why you felt that way?

A. I felt that way because I thought— my thinking when [plea counsel] asked me to sign over that money [the contents of his bank account] I believed that that was a deal made to make sure that the sentences were to run concurrent, and I believed that because the money had been closed out of my account at the [jail] prior to coming to court over here. I believed that [plea counsel] was right in the beginning and that's what was going to happen. I thought that I would get ten years and an additional five years to run concurrent for a total of ten years, although it would have been fifteen.

Q. Well, I'm a little confused because I [motion counsel] wasn't there. Had the money been taken out of your

---

4. At some earlier point in time, Movant had drafted a motion to remove his appointed counsel. He later withdrew that request.

Q. account, the—what was it, $2,800.00, $3,000.00?

A. Something like that.

Q. And that was—was it taken before you entered the *Alford* plea or between the time you entered the *Alford* plea and the time the judge sentenced you?

A. It was taken before. My account was closed at the [jail] weeks before.

Q. All right. Had you consented that the money be paid to the [victim]?

A. Not until [plea counsel] had me sign an agreement for me to give that to them.

Q. Was that on the day you entered the *Alford*?

A. Over here, yes, I believe it was.

Q. All right. So did you get to see the SAR? What's SAR stand for as far as you know?

A. Sentence Assessment Report, I believe it is. [Plea counsel] did read it to me, the public defender—read it to me and I had a copy of it. It got misplaced in the [jail], but I did read it—had it read to me by an attorney.

Q. And you thought you were going to get the sentence that it provided?

A. I believed I was going to, yes, I did.

Q. Before the SAR was completed—I guess it was completed between the time you entered the *Alford* plea and the time the judge sentenced you?

A. I believe it was at that time. I'm not really sure.

Q. Okay. So you think when you entered the *Alford* plea though, that you had a deal at that point in time?

A. I—yes, I did, I thought that.

Q. And you thought it would be what the SAR recommended?

A. The SAR report recommended ten years sentence, that's what the recommendation was. I knew that I had two charges and I subsequently would probably be sentenced to ten years on the financial exploitation charge, but I thought I would be sentenced to five years on the coin theft collection to run concurrent with the initial ten years.

. . . .

Q. Now, sir, I'm showing you Petitioner's Exhibit No. 2 [a document from the prosecutor's file entitled "Memorandum of Plea Agreement]. Tell the Court what you understand that to be.

A. [reading from the document]: Memorandum of Plea Agreement. Plea to SARS, Count II and III as amended. No agreement as to sentence. Nolle prosecute Count I.

Q. Did you sign that?

A. No. No, I did not.

Q. What did you think that meant?

A. I don't know. *I never saw it.*

Q. It's in the file though?

A. That it is. I have never saw [sic] it. I never signed it or anything. (Emphasis added.)

Movant testified as follows as to whether he would have entered a guilty plea if his understanding of his plea agreement had been different.

Q. If you had been told that the court didn't have to follow—not only didn't have to follow the recommendations of the prosecuting attorney with respect to sentence, but that you would have no opportunity to withdraw your plea of—your *Alford* plea, would you have still entered the *Alford* plea?

A. I would have asked, again, even though we did not go—I would have asked—again, I would have asked [plea counsel] for advice and just accepted whatever she said because of my belief in her even though I know we didn't get along. I would have accepted whatever she said, as I had showed by signing the money over and pleading to all the things I pled to. Regardless of the fact we didn't get along, I still had a belief in her and I lost it.

Movant further testified that he was afraid that if he did not "accept things [he] would be upgraded to the offenses for which [he] was charged[.]" He went on to explain that he "didn't believe [he] had a chance at a trial, at a jury trial—a court trial or a jury trial. I was afraid, so I just said well, you know, if that's what you say, okay."

Plea counsel testified as follows about when the State had agreed to make a sentencing recommendation to the court.

Q. When did you learn that [Movant] had money in his account at [the jail]?

A. I don't recall exactly. I do know we talked about it on the day of his sentencing.

Q. So was it the day of sentencing, not the day of plea, that you discussed this proposal and getting this money over to the victim?

A. Right. According to my notes that I have in my file we discussed [it] on the day of sentencing.

Q. Did you know at the time of the *Alford* plea that he had this money in the account?

A. I don't recall that I did. I don't know for sure, but I don't have recollection of that.

Q. Well, with regard to that recommendation that was made by [the prosecutor] on behalf of the [S]tate, that was a proposal you made on the day of sentencing, is that correct?

A. Correct.

Q. Did you have any plea agreement with the [S]tate prior to that or at the time of the *Alford* plea?

A. At the time of the *Alford* plea our only agreement was that they would dismiss Count I, amend down, I believe it was Count III, from an A felony to a B felony, not to file him as a prior and persistent felony offender.

There is no indication in the record that Movant introduced any documentary evidence supporting his claim that the money paid to victim was taken out of his account before he entered his guilty plea.

### Analysis

*Point I—Insufficiency of the Information*

Movant's first point contends the motion court erred in denying post-conviction relief because Count III of the Information was insufficient to state a violation of section 570.145. Specifically, Movant claims it was insufficient to plead a charge of financial exploitation of the elderly

both in its attempt to plead a deceptive practice and in its failure to allege the obtaining of control with the intent to permanently deprive the elderly or disabled person of the use, benefit or possession[5] and because the State's statement at plea and [Movant's] response concerning the statement to the [trial]

5. Although Movant's point does not identify the object of such use, benefit or possession, the argument section of his brief indicates that it is money.

court at plea did not cure said insufficiency.

The finding of the motion court now challenged by Movant was as follows:

> [Movant] was not denied his right to due process under the United States and Missouri [c]onstitutions with respect to Count III of the Amended Information because the allegations in the [I]nformation were adequate to cover the statutory elements of the offense and the [S]tate elicited facts covering all elements in the prosecutor's statement of facts. Movant admitted that the State could prove all of the facts alleged beyond a reasonable doubt.

 Movant acknowledges in his brief that a challenge to the sufficiency of an information is not a cognizable claim in a post-conviction relief proceeding, *see Rupert v. State*, 250 S.W.3d 442, 447 (Mo.App. E.D.2008); *Soutee v. State*, 51 S.W.3d 474, 480 (Mo.App. S.D.2001), as Movant's claim could (and therefore should) have been raised on direct appeal. *Rupert*, 250 S.W.3d at 447. " 'A postconviction motion does not substitute for a direct appeal.' " *Soutee*, 51 S.W.3d at 480 (quoting *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992)). "Issues that could have been raised on direct appeal may not be raised in post-conviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." *Rupert*, 250 S.W.3d at 447.

 Movant argues that he "did not enjoy a good working relationship with his counsel at the time of entering the plea and sentencing[.]" He does not suggest how the allegedly poor relationship prevented him from challenging the sufficiency of the State's information on direct appeal, let alone demonstrate how his inability to challenge it now is fundamentally unfair. Point I fails.

*Point II—No Right to Withdraw Plea*

Movant's second point asserts that the motion court clearly erred in denying his claim of ineffective assistance of counsel because his lawyer failed to ask the trial court to allow Movant to withdraw his guilty plea when it did not follow the State's recommendation as to sentencing. Specifically, Movant claims that: 1) the trial court did not advise Movant at the time of his guilty plea that he would be unable to withdraw his guilty plea; and 2) such a warning was required under Rule 24.02(d)2. The State concedes that the trial court "never explicitly told [Movant] that he could not withdraw his guilty plea if the [trial] court did not [sic] accept it," but it argues that plea counsel could not have been ineffective for failing to ask the trial court to allow Movant to set aside his guilty plea for that reason because the trial court was not required to give Movant such a warning. We agree.

"To prove ineffective assistance of counsel, a defendant must show counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and defendant was thereby prejudiced." *Nunley*, 923 S.W.2d at 922 (citing *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish prejudice, the defendant must show that the deficient performance affected the outcome, specifically, that " 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Coates v. State*, 939 S.W.2d 912, 914 (Mo. banc 1997) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "The issue of effectiveness of counsel is material only to the extent it affects the voluntariness and understanding with which the plea was made." *Triblett v. State*, 241 S.W.3d 856, 860 (Mo. App. S.D.2007).

Although Movant does not identify the specific provision of Rule 24.02(d) at issue, the argument that follows his point makes clear that he is referring to Rule 24.02(d)1(B), which allows the prosecutor to "[m]ake a [disposition] recommendation, or agree not to oppose the defendant's request, for a particular disposition, with the understanding that such recommendation or request shall not be binding on the court[.]" *Id.*

> If the agreement is pursuant to Rule 24.02(d)1(B), the court shall advise the defendant that the plea cannot be withdrawn if the court does not adopt the recommendation or request. Thereupon the court may accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report [SAR].

Rule 24.02(d)2. Movant asserts, "It appears that a proper characterization of the *Alford* plea there [sic] was to be a nonbinding recommendation, to-wit, pleading to the SAR." His claim is refuted by the record on appeal, including Movant's own testimony.

The transcript of Movant's plea reveals that the only agreement offered in exchange for Movant's guilty plea was that the State would enter a *nolle prosequi* on one of the counts originally asserted against Movant (Count I) and that Movant would not be charged as a prior and persistent offender. The plea transcript is devoid of any agreement by the State that it would either make a sentencing recommendation to the trial court or would not oppose any recommendation made by defense counsel.

At his subsequent sentencing hearing, Movant voiced no complaint about the fact that the trial court did not sentence him as recommended in the SAR. Further, when asked if Movant was "satisfied with the services of [his] attorney[,]" Movant said, "Yes." Movant then elaborated that his attorney had not refused to do anything he had requested of her in preparing his case and that he had no complaints about her representation.

Contrary to his prior sworn testimony, Movant testified at the motion hearing that he *had* reached an agreement with the State about a sentencing recommendation *before* he entered his *Alford* plea. That testimony was also in conflict with the testimony of plea counsel, who testified that the State's agreement to make a sentencing recommendation did not occur until the day of Movant's sentencing. Her testimony to that effect was also consistent with plea counsel's statement to the trial court (in Movant's presence) that no such agreement had been reached "before the entry of the plea of guilty[.]"

■ The motion court made a credibility determination in resolving the conflicting testimony, noting that "the veracity of the Movant is questionable in light of his own admissions to this [c]ourt about his truthfulness." It is the prerogative of the motion court to determine the credibility of witnesses, and it "is free to believe or disbelieve the testimony of any witness, including that of the movant." *Clay v. State*, 297 S.W.3d 122, 124 (Mo.App. S.D. 2009). We defer to those determinations. *See id.* Based on its credibility determination, the motion court concluded that the agreement about a sentencing recommendation from the State was reached after Movant had entered his *Alford* plea. As a result, Movant could not have been relying on any promise from the State regarding a sentencing recommendation at the time of his guilty plea because no such promise was made until *after* Movant had already pleaded guilty.

■ Under these circumstances, Rule 24.02(d)1(B) was not applicable to Movant's case because the State did not agree either to make a sentencing recommendation to the court or refrain from opposing any disposition request from Movant in exchange for his guilty plea.[6] In the absence of such an agreement, the trial court was not required to advise Movant that he would be unable to withdraw his guilty plea, and plea counsel was not ineffective for failing to ask the trial court to allow Movant to withdraw his guilty plea. *See Brooks v. State,* 51 S.W.3d 909, 915 (Mo. App. W.D.2001) (counsel is not ineffective for failing to make a futile request).

Movant cites *Trammell v. State,* 284 S.W.3d 625 (Mo.App. W.D.2009), in support of his claim that the trial court's failure to advise him that he would not be allowed to withdraw his guilty plea rendered his plea unknowing and involuntary. But the plea agreement in *Trammell* contained a sentence recommendation. 284 S.W.3d at 626. As a result, *Trammell* is inapposite. Point II fails.

### Point III—Movant's Plea was Knowing and Voluntary

Movant's final point claims the motion court clearly erred in denying his Rule 24.035 motion because he successfully proved that his plea was unknowing and involuntary because his counsel did not advise him as to the effect of his plea and plea agreement. We disagree.

■ First, Movant's claim is refuted by his guilty plea testimony that he fully understood the terms of his plea agreement and that no one was forcing him to plead guilty. Second, even if we were to assume that: 1) Movant's testimony to that effect was untrue; and 2) plea counsel did not inform Movant of the ramifications of his plea agreement, Movant would still have to demonstrate that but for his misunderstanding he would not have pleaded guilty and would have insisted on going to trial. *See Webb v. State,* 334 S.W.3d 126, 128 (Mo. banc 2011) ("To satisfy the 'prejudice' requirement when challenging a guilty plea, the movant must allege facts showing 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial' ") (internal citations omitted).

■ Movant presented no such evidence. Instead, Movant testified that he "didn't believe [he] had a chance at a trial" and "would have accepted whatever [his counsel] said, as [he] had showed by signing the money over and pleading to all the things [he] pled to." Movant also testified that he wanted the judge to accept his plea in order to limit his exposure to additional punishment as a prior and persistent offender—a benefit granted him under his plea bargain. The motion court was entitled to credit this testimony. *See Clay,* 297 S.W.3d at 124. Because Movant failed to prove the necessary prejudice, we have no need to determine whether plea counsel failed to fully advise Movant of the ramifications of his guilty plea. *Chaney v. State,* 223 S.W.3d 200, 206 (Mo.App. S.D.2007).

---

6. Although Movant's brief relies on the wording contained in the State's Memorandum of Plea Agreement in arguing that Movant believed he was "plead[ing] to an SAR[,]" this document stated that there would be no agreement as to Movant's sentence, and it makes no express statement that any particular sentence would be recommended. More importantly, Movant testified that he had never seen that "agreement[,]" and he did not know what it meant. We also observe that before Movant announced at sentencing his satisfaction with his attorney, plea counsel had informed the trial court that the prosecutor's post-plea agreement was to recommend "five and ten consecutive," a term greater than the ten-year sentence recommended in the SAR.

Point III is also denied, and the motion court's order denying post-conviction relief is affirmed.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.