

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| RASHOD L. JAMES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85347 |
| | ) | |
| STATE OF MISSOURI, | ) | Filed: November 14, 2023 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County
The Honorable Marco A. Roldan, Judge**

**Before Division Three: Karen King Mitchell, P.J.,
and Alok Ahuja and Edward R. Ardini, Jr., JJ.**

Rashod James was originally charged in the Circuit Court of Jackson County with first-degree murder, armed criminal action, and two other felonies. Pursuant to an agreement with the State, James pleaded guilty to one count of murder in the second degree and one count of armed criminal action; the other charges were dismissed. James filed a motion for post-conviction relief under Supreme Court Rule 24.035, contending that his attorney had coerced him into pleading guilty by predicting that James would be executed if he went to trial on the first-degree murder charge. The circuit court denied relief following an evidentiary hearing. James appeals. We affirm.

## Factual Background

On July 27, 2012, the State charged James by indictment with first-degree murder; first-degree robbery; and two associated counts of armed criminal action. The indictment alleged that on or about November 1, 2010, in Kansas City, James knowingly caused the death of the victim by beating her, and that he also forcibly stole her motor vehicle.

On January 30, 2014, James pleaded guilty to second-degree murder and armed criminal action, with the agreement that the State would dismiss the robbery count and the second armed criminal action count. The State and James also agreed that he would be sentenced to no more than thirty years for second-degree murder and no more than ten years for armed criminal action.

At his plea hearing, James appeared with two attorneys. The second attorney had entered his appearance on December 13, 2013. Testimony at the post-conviction evidentiary hearing reflected that the second attorney had joined James' defense team because he had experience in capital murder cases.

At his plea hearing, James acknowledged that he had read the police report, had discussed the charges with his attorneys, and fully understood the nature of the charges and the evidence against him. James also testified that he understood the range of punishment for the felonies to which he was pleading guilty, and the limitations placed on the court's sentencing authority by the plea agreement. James acknowledged that he did not have to plead guilty, and that he was waiving certain constitutional rights, including his right to a jury trial, by doing so. James testified that he was pleading guilty voluntarily, and that no one had forced or coerced him to plead guilty, or promised him anything other than the plea agreement described in open court.

2

James also testified to the factual basis for his convictions. James acknowledged that he went to the victim's apartment to rob it without realizing that she was home. When he discovered the victim's presence, James hit her repeatedly in the head with a lamp, tied her up, and stole items from her home. James acknowledged that the victim subsequently died of the injuries he had inflicted.

The court found that James' guilty pleas were made freely, voluntarily, and intelligently, and that there was a factual basis for his guilt on both counts. The court ordered a Sentencing Assessment Report and set the sentencing hearing for March 20, 2014.

On February 19, 2014, before sentencing, James filed a motion to withdraw his guilty plea and requested the appointment of new counsel under Rule 29.07(d). James' motion contended that he was actually innocent of the charges, and that his attorneys had coerced him into pleading guilty (even though he had acknowledged his guilt, and expressed no concerns with counsel's representation, during his plea hearing). In reliance on James' statements during the plea hearing, the circuit court denied his motion to withdraw his pleas without hearing additional evidence.

On March 20, 2014, the court sentenced James to thirty years for second-degree murder and ten years for armed criminal action, with the sentences to be served concurrently.

On October 14, 2020, James filed a motion for post-conviction relief pursuant to Supreme Court Rule 24.035. The court appointed the public defender to represent him, and James filed an amended motion on November 16,

3

2021. The amended motion asserted three grounds, only one of which James raises on appeal: that his pleas were not voluntary, because plea counsel coerced him into pleading guilty by threatening that he would be "killed by the State" if he did not accept the State's plea offer.

The circuit court held an evidentiary hearing on March 11, 2022, at which it took judicial notice of the underlying criminal file, including the plea and sentencing transcripts. The court also heard testimony from both James and the second of his trial attorneys, who had entered his appearance in December 2013.

James' plea counsel primarily testified concerning James' other post-conviction relief claims, which are no longer in issue. James testified that, when he was initially charged, his second attorney had told James that if he didn't accept the State's plea offer, he would be facing the death penalty. James claimed that counsel said something like, "don't let the State of Missouri kill you." "The only thing from my understanding was that either I plead guilty to these charges and he tried to get them reduced or I face the death penalty." James said that counsel predicted he would only be sentenced to eighteen or twenty-two years on the murder charge, but did not promise him anything.

During his post-conviction testimony, James acknowledged that he had answered questions from the court during his plea hearing, and that he was under oath at the time. He stated, however, that when he answered those questions, "I had no knowledge of the law. I didn't know exactly what coerce even meant at the time." James testified that he simply followed the plan that he and his attorneys had discussed beforehand, without truly understanding what he was saying. He said that if he was asked the same questions now, he would

4

change his answers because at the time he felt scared and coerced into taking the plea because he did not want to be killed.

On April 20, 2022, the circuit court issued factual findings and conclusions of law denying James' post-conviction relief motion. The court specifically found that James' initial post-conviction motion, and the amended motion, were timely under the relevant version of Rule 24.035. The court rejected James' claim that his pleas were not voluntary. It found that James' testimony during the post-conviction evidentiary hearing was not credible. Instead, the circuit court relied on James' statements during the plea hearing that he had no complaints with counsel, and that he had not been threatened or coerced to plead guilty. The court also rejected James' other two claims.

James appeals.

## Discussion

James argues that the circuit court clearly erred by denying his post-conviction relief motion because his attorneys coerced him to plead guilty by telling him that, if he did not plead guilty, he would be "killed by the State."

> Appellate review of the denial of a Rule 24.035 motion "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." Rule 24.035(k). "The motion court's findings are presumed correct." *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005) (citing *Black v. State*, 151 S.W.3d 49, 54 (Mo. banc 2004)). Findings of fact and conclusions of law are clearly erroneous if, after review of the entire record, we are "left with the definite and firm impression that a mistake has been made." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016); *Johnson v. State*, 527 S.W.3d 904, 906 (Mo. App. E.D. 2017).

*Newlon v. State*, 628 S.W.3d 446, 450 (Mo. App. E.D. 2021).

5

## I.

As an initial matter, we reject the State's contention that the circuit court clearly erred in finding that James' initial and amended Rule 24.035 motions were timely filed.

## A.

James was sentenced in March 2014, but filed his *pro se* post-conviction motion in 2020. Under Rule 24.035(m), if a movant was sentenced prior to January 1, 2018, the movant's right to post-conviction relief "shall continue to be governed by the provisions of Rule 24.035 in effect on the date the motion was filed or December 31, 2017, whichever is earlier." Because James was sentenced in 2014, under Rule 24.035(m) the timeliness of his *pro se* motion is governed by the version of Rule 24.035 in effect on December 31, 2017. *See Huskey v. State*, 635 S.W.3d 886, 888 n.1 (Mo. App. E.D. 2021); *Ashley v. State*, 574 S.W.3d 314, 316 (Mo. App. W.D. 2019).

The version of Rule 24.035(b) in effect in 2017 provided that if no appeal of the judgment or sentence was taken, "the motion shall be filed within 180 days of the date the person is delivered to the custody of the department of corrections."

James filed his *pro se* 24.035 motion on October 14, 2020. In order for James' *pro se* motion to have been timely, he would have to have been delivered to the Department of Corrections on or after April 17, 2020. The amended motion prepared by James' appointed counsel pleaded that his *pro se* motion was timely, because he had been delivered to the Department of Corrections on August 31, 2020.

The State's written response to James' amended motion specifically admitted that his *pro se* motion was timely filed on October 14, 2020.

At the evidentiary hearing, the circuit court took judicial notice of the underlying criminal file, and the transcripts of James' plea and sentencing hearings, in addition to hearing live testimony. James' plea transcript reflects that he was arrested on a federal weapons charge on October 24, 2010, and subsequently received a 10-year sentence in federal court, of which he would have to serve at least 85%. At the time of James' state-court plea hearing on January 30, 2014, he testified that he had served approximately three-and-one-half years of his ten-year federal sentence, and was facing at least another five years of federal imprisonment. At the post-conviction evidentiary hearing, James testified that, after his state-court sentencing in 2014, he went back to federal prison, and "served all [his] time" in federal custody before he was "released back to the State of Missouri."

Before James presented any evidence at the evidentiary hearing, the attorney for the State directly addressed the timeliness issue, and specifically told the court:

> One big specific change [to Rule 24.035,] especially as it affects this case is that the defendant was not delivered to the department of corrections until 2020. And because of his guilty plea and when it took place we were functioning under the old rule of 24.035 that was in place in 2014. So his timeframe did not start until he was actually delivered to the department of corrections. So based upon his delivery, his filing of this pro se motion, [PCR counsel's] requests for extensions in the Amended Motions, it's the State's belief that everything is timely filed but I just want the record to reflect those particular things.

As the State emphasizes in its Brief, "[i]t is the court's duty to enforce the mandatory time limits and the resulting complete waiver in the post-conviction

rules – even if the State does not raise the issue." *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. 2012).

While *Dorris* holds that the time limitations in Rules 24.035 and 29.15 are non-waivable, it does not prohibit the parties from stipulating to, or admitting, the facts necessary to establish the timeliness of a movant's filings. "[S]tipulations of fact relieve[ ] the parties from proving the matters stipulated." *Pearson v. Koster*, 367 S.W.3d 36, 54 (Mo. 2012) (citing *In re Marriage of Hendrix*, 183 S.W.3d 582, 591 (Mo. 2006)).

> "A stipulation is an agreement between counsel with respect to business before the court." Just because an oral agreement is not formally called a "stipulation," does not mean that it will not be treated as such. Stipulations are to be "'interpreted in view of the result which the parties were attempting to accomplish.'"

*Randolph v. Mo. Highways and Transp. Comm'n*, 224 S.W.3d 615, 621 n. 8 (Mo. App. W.D. 2007) (citations omitted).

Similarly, "[a] judicial admission is 'an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true.'" *Dash v. Taylor*, 668 S.W.3d 580, 587 (Mo. App. E.D. 2023) (quoting *Moore Automotive Grp., Inc. v. Goffstein*, 301 S.W.3d 49, 54 (Mo. 2009)). "'A statement by counsel made during trial is a binding judicial admission if, and only if, the statement constitutes a clear, unequivocal admission of fact.'" *Goudeaux v. Bd. of Police Comm'rs*, 409 S.W.3d 508, 519 (Mo. App. W.D. 2013) (citation omitted); *see also*, *e.g.*, *Brock v. McClure*, 404 S.W.3d 416, 420 (Mo. App. W.D. 2013).

The parties did not formally state that they were stipulating to the date on which James was delivered to the Department of Corrections, and that his

delivery date was within 180 days of the filing of his *pro se* motion. Nevertheless, in light of the explicit allegations in James' amended motion, the State stipulated to or admitted that James was delivered to the Department of Corrections on or after April 17, 2020, in its written response to the amended motion, and in its comments during the post-conviction evidentiary hearing. This made further proof of James' delivery date unnecessary. If additional evidence were necessary, the record reflects that James served "all [his] time" on a ten-year federal sentence imposed in late 2010 prior to his delivery to the Department of Correction.

In *Hatmon v. State*, 661 S.W.3d 760 (Mo. 2023), the circuit court's judgment denying post-conviction relief generally found that the movant's *pro se* motion had been timely filed. Despite this finding, the Supreme Court vacated the circuit court's judgment and remanded for the circuit court to make specific findings as to the date on which the movant had been delivered to the Department of Corrections on a particular charge. *Id.* at 765.

*Hatmon* does not require a remand to the circuit court for more specific findings. In *Hatmon*, the circuit court found the *pro se* motion to be timely "without any briefing or argument on that question," "on a record that contain[ed] (at best) contradictory indications" as to the movant's delivery date on the charge in question. *Id.* Unlike in *Hatmon*, in this case James' amended motion specifically alleged that his *pro se* motion was timely based on his delivery to the Department of Corrections on August 31, 2020. The State's response conceded the timeliness of James' *pro se* motion, and there was evidence in the record indicating that James was subject to a ten-year sentence

9

imposed in late 2010, which he fully served before being remanded to State custody. Moreover, at the evidentiary hearing the State's counsel conceded that James "was not delivered to the department of corrections until 2020," thereby making his *pro se* motion timely under the applicable earlier version of Rule 24.035. Finally, while the evidentiary record may not establish James' precise date of delivery to the Department of Correction (understandable in light of the State's concession), unlike in *Hatmon* the record in this case contains no "contradictory indications" as to James' delivery date.

Given the State's oral and written statements concerning the timeliness of James' *pro se* motion, combined with the other evidence in the record supporting James' allegation that he was delivered to the Department of Corrections in 2020 less than 180 days before the filing of his *pro se* motion, the circuit court did not clearly err in concluding that James' *pro se* motion was timely filed.

**B.**

James' amended motion was also timely. Rule 24.035(g) (2017) provided that where no appeal was taken,

> the amended motion shall be filed within sixty days of the earlier of the date both a complete transcript consisting of the guilty plea and sentencing hearing has been filed in the trial court and:
>
> > (1) Counsel is appointed, or
> >
> > (2) An entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant.

The Rule further provided that the court could grant _one_ extension of time, for a period not to exceed thirty days. *Id.*

After James filed his *pro se* motion, the circuit court appointed the public defender on October 15, 2020, and gave counsel "90 days to amend movant's

10

Rule 24.035 motion consistent with the timing provisions of Rule 24.15(g) (sic)."
The sentencing transcript was subsequently filed on March 25, 2021. The record
reflects that the guilty plea transcript was *completed* on August 18, 2021, but
nothing in the record suggests that the guilty plea transcript was <u>ever</u> filed in the
circuit court.

Appointed counsel ultimately filed an amended post-conviction relief
motion on November 16, 2021.

The Rule in effect in 2017 was clear that securing and filing transcripts of a
movant's plea and sentencing hearings was the duty of the clerk of the court, and
not of the movant:

> **(c) Clerk's Duties.** Movant shall file the motion and two
> copies thereof with the clerk of the trial court. . . . Upon receipt of
> the motion, the clerk shall notify the sentencing judge and shall
> notify the court reporter to prepare and file the complete transcript
> of the movant's guilty plea and sentencing hearing if the transcript
> has not yet been prepared or filed.

Rule 24.035(c) (2017). The time limit for filing an amended motion began to run
only on the filing of this "complete transcript." Rule 24.035(g) (2017).

As the Missouri Supreme Court explained in *Dorris*, "'[c]omplete' means
'total, absolute.'" 360 S.W.3d at 267 (citation omitted). The filing of only the
sentencing transcript is plainly not "a complete transcript consisting of the guilty
plea and sentencing hearing" as required to start the clock running on the filing
of an amended motion under Rule 24.035(g) (2017).

In *Tinsley v. State*, 643 S.W.3d 146 (Mo. App. E.D. 2022), the clerk never
actually filed a complete transcript, but instead merely made a docket entry
indicating "Transcript Filed." *Id.* at 149-50. The Court held that, because the

transcript was not itself ever filed as part of the court's record, the time within which to file an amended motion never began to run, and therefore the movant's amended motion was necessarily timely.  *Id.*  The same analysis applies here.

Notably, the Reporter's Certificate appended to the guilty plea transcript states: "Transcript completed on August 18, 2021."  Even if the transcript had been *filed* that same day, James' amended motion would have been due (accounting for the thirty-day extension granted by the circuit court) on November 16, 2021 – the day counsel actually filed it.  The circuit court did not clearly err in concluding that James' amended motion was also timely filed.

## II.

Having determined that James' *pro se* and amended motions were timely, we now turn to the merits of his claim on appeal.  James contends that he is entitled to post-conviction relief because his second attorney, an experienced capital-defense lawyer, coerced him to plead guilty by telling him that he would be "killed by the State" if he did not accept the State's plea offer.

To prevail on a claim of ineffective assistance of counsel, including after a guilty plea, the movant must show by a preponderance of the evidence that: (1) counsel's performance was deficient because they did not exercise the customary skill and diligence that a reasonably competent attorney would use in similar circumstances; and (2) the deficient performance prejudiced the movant. *Cherco v. State*, 309 S.W.3d 819, 822 (Mo. App. W.D. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "'If conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was

12

made.'" *Johnson v. State*, 580 S.W.3d 895, 900 (Mo. 2019) (quoting *Cooper v. State*, 356 S.W.3d 148, 153 (Mo. 2011)). "'To show prejudice in a guilty plea case, a defendant must prove that, but for the errors of counsel, he would not have pleaded guilty and would have demanded trial.'" *Id.* (quoting *Cooper*, 356 S.W.3d at 153).

A guilty plea may be involuntary if counsel misleads the defendant, or induces the defendant to plead guilty by fraud, mistake, fear, persuasion or holding out unfounded hopes. *Whitehead v. State*, 481 S.W.3d 116, 125 (Mo. App. E.D. 2016). However, if the defendant entered a guilty plea with "sufficient awareness of the relevant circumstances and likely consequences of the act," the plea is made knowingly and voluntarily. *Id.* at 125-126 (quoting *Muhammad v. State*, 367 S.W.3d 659, 661 (Mo. App. E.D. 2012)).

The circuit court specifically found that James' testimony at the evidentiary hearing was not credible, including his claim that his attorney said the State would "kill him" if he did not plead guilty. Our standard of review requires us to give deference to "the motion court's superior opportunity to judge the credibility of witnesses." *McFadden v. State*, 553 S.W.3d 289, 298 (Mo. 2018) (citation omitted). James' post-conviction claim of coercion was directly contrary to his testimony at his plea hearing. The circuit court was entitled to credit James' disclaimer of coercion at the plea hearing, rather than his contrary post-conviction testimony.

The record in this case also contains James' pre-sentencing letter to the court, in which he claimed that he had been coerced by counsel to plead guilty and that he was actually innocent. As with James' testimony at the evidentiary

hearing, the circuit court was free to believe or disbelieve his pre-sentencing claim of coercion.

Even if the circuit court had credited James' testimony as to what his second attorney told him, we question whether it would have been sufficient to establish a right to post-conviction relief. A guilty plea is not considered to be coerced where plea counsel offers their assessment of the strength of the State's case; predicts that the defendant is likely to be convicted; or offers a prediction concerning a likely sentence. "'A mere prediction or advice of counsel will not lead to a finding of legal coercion rendering a guilty plea involuntary.'" *Steger v. State*, 467 S.W.3d 887, 893 (Mo. App. E.D. 2015) (citation omitted); *Pittman v. State*, 331 S.W.3d 361, 365 (Mo. App. W.D. 2011). As this Court explained in *Chaney v. State*, 223 S.W.3d 200 (Mo. App. S.D. 2007) (which involved the same capital-defense counsel):

> It is the duty of counsel to advise a client of the possible consequences of trial so that the client may make an informed decision as to whether to accept or to reject a plea agreement. It appears [counsel] advised Movant of the ramifications of proceeding to trial; of the probability that he would be convicted; and of the likelihood that he would receive the death penalty. Sound advice by counsel does not constitute coercion merely because it is unpleasant to hear.

*Id.* at 207 (citations and internal quotation marks omitted).

The record does not reflect whether the State was in fact initially pursuing the death penalty; James does not dispute, however, that the death penalty was a possibility if he had gone to trial on a first-degree murder charge. James did not present any evidence that would support a finding that counsel misled him about the availability of capital punishment in his case.

14

In *Johnson v. State*, 580 S.W.3d 895 (Mo. 2019), the Supreme Court held that the availability of the death penalty in a particular murder prosecution does not make a defendant's plea to lesser charges involuntary or coerced: "the fact that the maximum authorized punishment for a certain crime may be a threatening alternative in itself does not render a plea involuntary." *Id.* at 901. As in *Johnson*, the record in this case reflects that James understood his rights and the nature of the proceedings and potential consequences; was able to rationally weigh his options; and denied that he was threatened during his plea hearing. In these circumstances, the circuit court did not clearly err in finding that James had failed to establish that his guilty plea was involuntary, despite his claim that he was intimidated by the thought of being sentenced to death. *Id.* at 902.

The circuit court did not clearly err in rejecting James' claim that his guilty plea was coerced by counsel's statements concerning the prospect of the death penalty if James proceeded to trial on a first-degree murder charge.

## Conclusion

The judgment of the circuit court, which denied James' motion for post-conviction relief, is affirmed.

_____
Alok Ahuja, Judge

All concur.

15